UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YOUA VUE,

Plaintiff,

v.

COUNTY OF YUBA, et al.,

Defendants.

No. 2:21-cv-02222-TLN-CSK

**ORDER**

This matter is before the Court on Defendants Wellpath Management, Inc. ("Wellpath"), California Forensic Medical Group, Inc. ("CFMG"), Talwinder Gill ("Gill"), and Malgorzata Klimczuk's ("Klimczuck") (collectively, "Wellpath Defendants") Motion to Dismiss.[1] (ECF No. 47.) Plaintiff Youa Vue ("Plaintiff") filed an opposition. (ECF No. 49.) Wellpath Defendants filed a reply. (ECF No. 52.) For the reasons set forth below, Wellpath Defendants' motion is GRANTED.

///

///

///

[1] The County of Yuba (the "County"), Wendell Anderson, Allan Garza, Andres Magana, and Kym Ross (collectively, "County Defendants" or "Yuba Defendants") are also named defendants in this action but do not join in the instant motion.

## I. Factual and Procedural Background[2]

The instant action arises from Wellpath Defendants' alleged violation of various rights under the United States Constitution and state law in connection with the tragic death of Plaintiff's son, Vong Yang ("Yang"). (*See* ECF No. 1.) In late 2019, Yang was diagnosed with kidney failure. (ECF No. 32 at 18.) Consequently, he was receiving dialysis treatment up to the time of his arrest by Yuba County Sheriff's deputies on February 26, 2021. (*Id.*) Yang received treatment three times a week in Yuba City, on Mondays, Wednesdays, and Fridays. (*Id.*) Yang also had respiratory issues that required him to carry a large oxygen tank. (*Id.*)

In the morning of February 26, 2021, Yang was arrested in the parking lot of the Plumas Stop and Shop on River Oaks Boulevard on suspicion of being under the influence of a controlled substance — before his appointment for dialysis treatment on Friday. (*Id.* at 18–19.) Yang communicated the fact he was on dialysis to the arresting officer and had a readily visible dialysis port permanently installed in his forearm to receive dialysis treatment. (*Id.* at 19.) The arresting officer, Andres Magana ("Magana"), initially requested medical personnel to come to the scene of the arrest at 7:41 a.m. because Yang was a dialysis patient. (*Id.*) However, at 7:46 a.m., Magana canceled the ambulance and arrested Yang instead. (*Id.*) Yang arrived at Yuba County Jail at approximately 8:14 a.m. (*Id.*)

Plaintiff alleges Magana failed to communicate the fact that Yang was a dialysis patient to correctional officers and Klimczuk, who assisted Magana with booking Yang. (*Id.*) Plaintiff further alleges Yang was not screened for medical health issues by Klimczuk or correctional officers before he was booked in violation of an Amended Consent Decree (under which Yuba County Jail must improve conditions and disability access). (*Id.* at 13, 20.)

Yang was exhibiting objective signs of a medical emergency when he first arrived at Yuba County Jail, including, but not limited to, lethargy, confusion, disorientation, and the inability to stand or walk without assistance. (*Id.* at 20.) A correctional officer observed Yang before he was booked, believed he was not fit to be booked at Yuba County, and communicated this concern to

[2] The instant factual background is taken largely verbatim from Plaintiff's Second Amended Complaint. (*See* ECF No. 32.)

another correctional officer. (*Id.*)

Yang was then placed in a sobering cell where he was kept until February 28, 2021, at 12:30 a.m. (*Id.*) Yang was monitored every thirty minutes by Yuba County correctional officers, all of whom observed objective signs of Yang's poor health. (*Id.*) Between the time Yang was booked until February 28, 2021, at 12:30 a.m., Klimczuk and Gill checked Yang's vitals seven times but did not inquire into the visible dialysis port in his arm. (*Id.* at 21.) During the same time period, Yuba County correctional officers observed Yang's poor condition and odd behavior, including, but not limited to, yelling, talking to himself, lying flat on his stomach, falling down upon standing, and vomiting. (*Id.*) Yang told Klimczuk and a correctional officer on February 27, 2021, at approximately 4:00 p.m. that he was "missing dialysis." (*Id.* at 22.) Plaintiff asserts Wellpath, CFMG, Klimczuk, Gill, and another doctor failed to arrange for Yang's dialysis treatment at Yuba County Jail or Rideout Memorial Hospital even though he had a visible dialysis port in his arm, exhibited symptoms of uremia from the outset, and explicitly told Klimczuk he needed dialysis treatment. (*Id.*)

On February 28, 2021, at 12:30 a.m., Yang was taken off sobering checks and transferred to a holding cell by correctional officers who had to physically assist him by holding his arms. (*Id.*) At 2:39 a.m., Yang rolled off the bench in the holding cell and fell on the floor. (*Id.*) In the early morning hours, correctional officers checked on Yang three times. (*Id.*) At approximately 3:00 a.m., a correctional officer entered the cell after Yang did not show signs of consciousness and nudged him with her foot, which caused him to roll from the supine position onto his left side. (*Id.*) The correctional officer continued to nudge him for about one minute before he showed signs of consciousness and then left. (*Id.*) At approximately 5:57 a.m., a correctional officers checked in on Yang again. (*Id.* at 23.) Yang moved his left arm after a correctional officer hit the cell window with an open hand and another officer entered the cell and nudged Yang with his foot for additional sign of life. (*Id.*) None of the officers summoned medical care. (*Id.*) At approximately 6:13 a.m., another correctional officer entered Yang's holding cell and nudged him with his right foot before placing a food tray inside his cell. (*Id.*) The officer did not summon medical care. (*Id.*)

At 7:05 a.m., another correctional officer looked inside Yang's cell and summoned help because Yang was nonresponsive. (*Id.*) Between 7:06 a.m. and 7:10 a.m., correctional officers and Klimczuk attempted life saving measures. (*Id.*) Between 7:11 a.m. and 7:35 a.m., Marysville Fire Department and EMTs also attempted life saving measures. (*Id.* at 24.) Yang was officially pronounced dead at 7:46 a.m. on February 28, 2021. (*Id.*)

On December 2, 2021, Plaintiff filed this civil rights action, alleging violations of various rights under the United States Constitution and state law in connection with Yang's death. (ECF No. 1.) On January 30, 2024, Plaintiff filed the operative Second Amended Complaint ("SAC"), alleging the following claims against Wellpath Defendants: (1) denial of medical care in violation of the Fourteenth Amendment (Claim Two); (2) deprivation of life without due process (Claim Three); (3) negligence (Claim Five); (4) wrongful death (Claim Six); (5) negligent supervision, training, hiring, and retention (Claim Seven); (6) failure to summon immediate medical care in violation of California Government Code § 845.6 (Claim Eight); (7) infliction of cruel and unusual punishment (Claim Nine); and (8) discrimination on the basis of disability (Claim Ten). (ECF No. 32.) On April 5, 2024, Wellpath Defendants filed the instant motion to dismiss. (ECF No. 47.) On April 19, 2024, Plaintiff filed an opposition. (ECF No. 49.) On May 13, 2024, Wellpath Defendants filed a reply.[3] (ECF No. 53.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

[3] The Court notes this matter was stayed from November 15, 2024 to May 14, 2025, due to Wellpath's bankruptcy proceedings. (ECF Nos. 55, 64.)

motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

///

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. ANALYSIS

Wellpath Defendants argue a one-year statute of limitation applies and Plaintiff's claims are time-barred.[4] (ECF No. 47 at 11–13.) In opposition, Plaintiff asserts the operative statute of limitations is two years, all her claims are within that time period, and her claims did not start accruing until June 30, 2022, under the discovery rule. (ECF No. 49 at 9–12.) Plaintiff asserts in the alternative that equitable tolling applies in this case and the claims against Wellpath Defendants relate back to December 2, 2021, the date of her original Complaint. (*Id.* at 12–16.) The Court will address each of these arguments in turn.

### A. Statute of Limitations

Wellpath Defendants argue the one-year statute of limitations in California Civil Procedure Code § 340.5 ("§ 340.5") applies to and bars all of Plaintiff's claims, which arise from their treatment of Yang. (ECF No. 47 at 11–13.) In opposition, Plaintiff asserts the operative statute of limitations is two years pursuant to California Civil Procedure Code § 335.1 ("§ 335.1"). (ECF No. 49 at 9–10.)

Section 340.5, the Medical Injury Compensation Reform Act ("MICRA"), provides that

> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of

---

[4] Wellpath Defendants also argue Plaintiff fails to state a claim for the claims asserted against them. (*Id.* at 13–19.) However, since the Court finds Plaintiff's claims are time-barred, it need not and does not address these remaining arguments.

> reasonable diligence, should have discovered, the injury, whichever occurs first.

Cal. Civ. Proc. Code § 340.5. "Where the plaintiff's claim is premised on the violation of a professional obligation owed in the rendering of a patient's medical care, treatment, or diagnoses, the claim sounds in professional negligence and the MICRA statute of limitations will apply." *Gutierrez v. Tostado*, 18 Cal. 5th 222, 238 (2025). However, if "the alleged negligence does not implicate a specific professional obligation along the foregoing lines and violates only the duty of ordinary care owed to the general public, the claim does not involve professional negligence and the MICRA statute of limitations is inapplicable." *Id.*

Here, the Court need not consider Wellpath Defendants' argument that MICRA's one-year statute of limitation applies because Plaintiff's claims are untimely even under the two-year statute of limitations of § 335.1. Because Plaintiff initiated this action on December 2, 2021, and did not name Wellpath, Gill, and Klimczuk for the first time until she filed her First Amended Complaint ("FAC") on December 29, 2023, and did not name CMFG until she filed her SAC on January 30, 2024, these claims are nevertheless untimely.

B. Application of the Discovery Rule

Plaintiff argues that the limitations period against Wellpath Defendants did not begin accruing when she filed this action because at that time she did not know about the existence of Wellpath Defendants nor that the County of Yuba contracted with them to provide medical and mental health services at Yuba County Jail. (ECF No. 49 at 10.) Plaintiff maintains she only learned these facts when discovery commenced with Yuba Defendants and they made an informal document production subject to a protective order on May 20, 2022, and later served formal responses to Plaintiff's discovery requests on June 16, 2022, wherein County of Yuba identified Wellpath Defendants. (*Id.*) Plaintiff contends document review took two to three weeks, and therefore the statute of limitations did not accrue until June 30, 2022. (*Id.* at 11.)

In reply, Wellpath Defendants argue Plaintiff does not cite to any case law to support her position that the claims did not accrue until she learned the Wellpath Defendants' identities. (ECF No. 53 at 6.) Further, Wellpath Defendants emphasize Plaintiff concedes the claims accrue

when she "knows or has reason to know of the injury which is the basis of this action," Yang's death was immediately apparent, and Plaintiff's claims began accruing when she filed her initial Complaint, when she was on notice of "a potential error causing his death." (*Id.* (citing ECF No. 49 at 9).) According to Wellpath Defendants, lack of knowledge of the identity of a defendant does not delay accrual of claims because it is not an element of the claim. (*Id.* at 7.)

The California State Legislature, in its codification of the discovery rule, "required plaintiffs to pursue their claims diligently by making accrual of a cause of action contingent on when a party discovered or *should have* discovered that his or her injury had a wrongful cause." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis in original). The California Supreme Court has clarified that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Id.* Plaintiffs who seek to rely on the discovery rule to delay accrual of their claims must specifically plead facts on the face of their complaint to establish "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* (emphasis in original). The discovery rule allows claims to accrue "even if the plaintiff does not have reason to suspect the defendant's identity . . . because the identity of the defendant is not an element of a cause of action." *Id.* at 807. Once the plaintiff is aware of the cause of action, the plaintiff "normally has sufficient opportunity within the applicable limitations period to discover the identity of the [defendant]." *Id.* (cleaned up) (quoting *Norgart v. Upjohn Co.*, 7 Cal. 4th 383, 399 (1999)).

Here, the Court finds that Plaintiff fails to plead the time and manner of discovery, as well as the inability to make an earlier discovery despite reasonable diligence on the face of the SAC. (*See* ECF No. 32.) Plaintiff only ever explains the time and manner of discovery of Wellpath Defendants' identities in her opposition to the instant motion. (ECF No. 49 at 10.) However, even in her opposition, Plaintiff fails to cite to controlling authority for the proposition that the statute of limitations on her claims only started accruing after she learned of Wellpath Defendants' identities at the commencement of discovery. (*See id.*) The Court agrees with Defendants that Plaintiff was on notice of Yang's death and a potential wrongful cause associated

with his death prior to filing her initial Complaint on December 2, 2021. (ECF No. 53 at 6.) Therefore, Plaintiff's claims began accruing at that time, not when she discovered Wellpath Defendants' identities. Accordingly, the Court still finds Plaintiff's claims against Wellpath Defendants are untimely filed.[5]

C. Equitable Tolling

In the alternative, Plaintiff asserts equitable tolling applies in this case because (1) she diligently pursued her claims by filing her initial Complaint with limited information on December 2, 2021, and then promptly served Yuba Defendants and commenced discovery, (2) her lack of awareness about the existence and role of Wellpath Defendants stemmed from situations outside her control, as she was not provided with any documents and only an incident report regarding Yang's death in Yuba County Jail, and (3) Wellpath Defendants cannot argue they will suffer prejudice if equitable tolling were to apply because they have been aware of her claims well before they were named as defendants and attended a mediation before they were parties to the action. (ECF No. 49 at 12–13.)

In reply, Wellpath Defendants argue Plaintiff herself admits she learned of Wellpath Defendants on June 30, 2022 (which they dispute), but Plaintiff did not file leave to amend until June 14, 2023 — almost a year after she found out about their existence. (ECF No. 53 at 8.)

---

[5] Using the same reasoning, Plaintiff also argues her claims are not barred under California Civil Procedure Code § 340.5 because the one-year limitations period "does not begin until the plaintiff discovers both his or her injury and its negligent cause." (ECF No. 49 at 11 (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896 (1985)).) Plaintiff again emphasizes she did not discover Wellpath Defendants' identities were the "negligent cause" of Yang's death until after her counsel reviewed Yuba Defendants' discovery. (*Id.* at 12.) In reply, Wellpath Defendants maintain *Gutierrez* is analogous to the instant case. (ECF No. 53 at 7–8.) Indeed, in *Gutierrez*, the plaintiff alleged medical malpractice and sought advice from an attorney, who told her there was "no provable malpractice." 39 Cal. 3d at 896. The plaintiff subsequently sought advice from a second firm of lawyers, who told her she had basis for the suit. *Id.* at 897. The California Supreme Court rejected her argument that the statute of limitations began accruing when the second attorney informed her she had a claim, noting that "the uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time plaintiff learns, or should have learned, the *facts* essential to his claim." *Id.* (emphasis in original). Similarly, in this case, Plaintiff became aware of Yang's death and the cause prior to filing her initial Complaint and therefore suspected there was some "professional blundering" that led to his death before filing the Complaint. Accordingly, the Court still finds Plaintiff's claims are time-barred under this argument.

Wellpath Defendants note even the Court has acknowledged Plaintiff could have sought leave to amend earlier than she did. (*Id.* (citing ECF No. 26 at 4).) Wellpath Defendants maintain Plaintiff could have reasonably discovered their identities well before she received the County's discovery responses as the County's contract with CFMG is public record and a simple internet search reveals the identity of the County's medical contractor. (*Id.* at 8–9.)

"Equitable tolling . . . may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served." *Aoki v. Gilbert*, No. 2:11-cv-02797-TLN-CK, 2014 WL 3689345, at *9 (E.D. Cal. July 23, 2014). "To determine whether equitable tolling may extend a statute of limitations, courts must analyze whether a plaintiff has established the doctrine's three elements: timely notice to the defendant[;] lack of prejudice to the defendant[;] and reasonable and good faith conduct by the plaintiff." *Gould v. Cnty. of Fresno*, No. 1:24-cv-00699-JTL-SAB, 2025 WL 1142427, at *1 (E.D. Cal. Apr. 18, 2025) (quoting *St. Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 725–26 (2020)).

Here, the Court finds Plaintiff failed to engage in reasonable and good faith conduct. As the Court previously noted in its December 1, 2023 Order,[6] it was clear from the March 2022 joint status report and stipulation regarding the stay in this case that the parties contemplated Plaintiff would seek leave to amend the Complaint. (ECF No. 26 at 4.) The Court also agreed with Defendants at the time that Plaintiff could have sought leave to amend sooner. (*Id.*) Plaintiff represents that she learned of Wellpath Defendants' identities on June 30, 2022 (ECF No. 49 at 11), but failed to amend her Complaint to name Wellpath, Gill, and Klimczuk for the first time until she filed her FAC on December 29, 2023, and did not name CMFG until she filed her SAC on January 30, 2024 — almost a year and a half later. Plaintiff also fails to explain why she delayed so long in seeking to amend. Accordingly, Plaintiff fails to show why she is entitled to equitable tolling of her claims with respect to Wellpath Defendants.

---

[6] This Order granted Plaintiff's motion for leave to amend the Complaint and considered whether there was good cause to allow Plaintiff to amend after the pleading amendment deadline in the scheduling order had passed. (ECF No. 26.)

D. Relation Back

Plaintiff further argues in the alternative that the claims against Wellpath Defendants relate back to December 2, 2021, the date she filed her initial Complaint. (ECF No. 49 at 13.) Plaintiff maintains the allegations in the SAC clearly arise out of the same conduct, transactions, and occurrences set forth in Plaintiff's original Complaint — namely, failure to screen and provide medical care to Yang while he was in custody at Yuba County Jail that resulted in his wrongful death.[7] (*Id.* at 13–14.) Plaintiff also argues her SAC satisfies California's relation back doctrine because it designated the true names of the Doe defendants in her original Complaint: Wellpath as Doe 6, Gill as Doe 7, Klimczuk as Doe 8, and CMFG as Doe 10. (*Id.* at 16.)

In reply, Wellpath Defendants maintain Plaintiff's claims do not relate back to December 2, 2021, and the case law that Plaintiff cites for this proposition is inapposite. (ECF No. 53 at 9.) Wellpath Defendants contend Plaintiff identifies Does 1-20 as employees of the County of Yuba and none of them are employed by the County. (*Id.* at 11.) According to Wellpath Defendants, it is therefore unreasonable to assert they should have known they were Does 1-20. (*Id.*)

An amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the pleading." Fed. R. Civ. P. 15(c)(1)(B). "An amended claim arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765, F.3d 999, 1004 (9th Cir. 2014). When a limitations period derives from state law, Rule 15(c)(1) requires district courts "to consider both federal and state law and employ whichever affords the more permissive relation back standard." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200–01 (9th Cir. 2014) ("[A] plaintiff may be entitled to the benefit of state law relation back rules if those are more generous than Rule 15(c)."). Because the California rule is more lenient than the federal rule, the Court analyzes Plaintiff's relation back

---

[7] Plaintiff also makes substantive arguments under the Rule 15 standard. (ECF No. 49 at 13 – 14.) However, because the Court finds the more lenient relation back standard under California law applies in this case, it need not and does not consider the parties' Rule 15 arguments.

arguments under California law.

"Amendments of pleadings under California law are generally governed by California Civil Procedure Code § 473(a)(1)," which provides in relevant part that a "court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading . . . by adding or striking out the name of any party, or by correcting a mistake in the name of a party[.]" *Id.* at 1201. While § 473(a)(1) does not have any express relation back provisions, California case law recognizes a relation back exception under California Civil Procedure Code § 474 "where an amendment does not add a new defendant, but simply corrects a misnomer by which an old defendant was sued[.]"[8] *Id.* (cleaned up) (citing *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497 (2004)). In order for § 474 to apply, "the plaintiff must be genuinely ignorant of the defendant's identity at the time the original complaint is filed." *Id.* (internal quotations and citation omitted). The § 474 relation back also applies where a new defendant in an amended complaint is "substituted for an existing fictitious Doe defendant named in the original complaint." *Woo v. Superior Ct.*, 75 Cal. App. 4th 169, 176 (1999). The Ninth Circuit has also held such a substitution is proper even though it may violate Rule 15(c). *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1463 (9th Cir. 1988), *vacated on other grounds*, 490 U.S. 1087 (1989), *decision reinstated on remand*, 886 F.2d 235 (9th Cir. 1989) (citing *Lindley v. General Elec. Co.*, 780 F.2d 797 (9th Cir. 1986), *cert. denied sub nom. Stone & Webster Eng'r Corp. v. Lindley*, 476 U.S. 1186 (1986)).

---

[8] Courts explain the reason for this exception as follows:

> [T]he general rule supplies no litmus to differentiate between erroneous description and change of identity. It ignores the difference between a plaintiff who has committed an excusable mistake and one who seeks a free option among potential liability targets after the statute has run; neither does it consider modern business practices, which often divide integrated business operations — if only for tax purposes — among a group of artificial legal entities. To accommodate the latter factors, an "exception to the general rule" has been formulated, which permits correction where the plaintiff has committed an excusable mistake attributable to dual entities with strikingly similar business names or to the use of fictitious names.

*Butler*, 766 F.3d at 1201–02 (quoting *Hawkins*, 124 Cal. App. 4th at 1497).

Here, the Court finds the question of the applicability of the § 474 relation-back doctrine to be a very close call. However, the Court ultimately finds that Plaintiff's amended complaints adding Wellpath Defendants do not relate back under § 474 because Plaintiff fails to establish that she was "generally ignorant" of Wellpath Defendants' identities when she filed her original complaint. Further, Plaintiff's SAC identifies Wellpath Defendants as substitutes for these previously named fictitious defendants (*see* ECF No. 32), but Plaintiff's initial Complaint identifies Does 1-20 as County of Yuba employees (ECF No. 1 at 45 ("This civil rights action seeks compensatory and punitive damages from Defendants County of Yuba, Sheriff Wendell Anderson, Captain Allan Garza, and the DOE Yuba County Sheriff's Department Deputies and employees (hereinafter, 'DOES 1-5, DOES 1-10, and DOES')[.]")). The Court is unconvinced that replacing Wellpath Defendants for Doe County of Yuba employees is akin to merely correcting a mistake or misnomer. Thus, the relation back exception under California Civil Procedure Code § 474 does not apply in this case.

Because the Court finds that amendment would be ultimately be futile and "the pleading could not possibly be cured by the allegation of other facts," *Lopez*, 203 F.3d at 1130, the Plaintiff's claims asserted against Wellpath Defendants are dismissed without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Wellpath Defendants' Motion to Dismiss with prejudice. (ECF No. 47.) Wellpath Defendants are DISMISSED from this action. Plaintiff shall proceed on her remaining claims in the Second Amended Complaint asserted against the remaining Defendants. As there will be no further answers filed in this case, all discovery, with the exception of expert discovery, shall be completed no later than two hundred forty (240) days from the electronic filing date of this Order.

IT IS SO ORDERED.

DATE: August 2, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE